NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No. 04-33547/JHW |
| Sheilagh D. Waters | : | |
| Debtor | : | |
| | : | Adversary No. 06-1768 |
| Joseph D. Marchand, the Chapter 7 Trustee | : | |
| Plaintiff | : | |
| v. | | **OPINION ON MOTION FOR RECONSIDERATION** |
| | : | |
| Sheilagh D. Waters | : | |
| Defendant | : | |

APPEARANCES:   Richard Fiory Tallini, Esq.
27 Cedar Street
Mount Holly, New Jersey  08060-1612
Counsel for the Debtor

Joseph D. Marchand, Esq.
117-119 West Broad Street
P.O. Box 298
Bridgeton, New Jersey  08302
Counsel for the Chapter 7 Trustee

**FILED**
JAMES J. WALDRON, CLERK

October 18, 2007

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

The debtor seeks reconsideration of this court's earlier written decision denying the debtor her discharge pursuant to 11 U.S.C. § 727(a)(4). The debtor contends that her pro se appearance during the trial hampered her ability to

present sufficient evidence for the court to make an informed decision regarding her medical condition. The debtor also maintains that she was not afforded reasonable accommodation to fully explore the impact of her illness on her ability to make decisions. Specifically, she contends that her illness deprived her of the cognitive ability to form the fraudulent intent necessary to justify denying her a discharge under section 727(a)(4).

Denying the debtor a discharge is an extreme step and one that we do not take lightly. In light of the substantial impact on the debtor, she was afforded an additional opportunity to present expert testimony from her treating physician regarding the degree of her cognitive impairment and its impact upon her decision making. Upon review of this additional evidence, I have determined to vacate the order denying the debtor her discharge.

## **FACTS**

The factual presentation and procedural history as laid out in this court's opinion of April 5, 2007 are adopted herein. In summary, during the course of her bankruptcy filing, the debtor sought and obtained permission to sell her home. The debtor successfully arranged for a sale, but she failed to disclose to her bankruptcy counsel, to the trustee, or to the court that the sale

was for less than fair market value and that it included a lease-repurchase agreement.  When the Chapter 7 trustee later discovered these facts, he filed this adversary complaint seeking to deny the debtor her discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and/or (C).  The trustee alleged that the debtor had "knowingly and fraudulently made a false oath or account by failing to disclose all of the details of the transaction involving the sale of her home to the court and to the parties, including her lease-purchase opportunity and the reduced selling price of the property."  In re Waters, No. 04-33547, 2007 WL 1071944, *4 (Bankr. D.N.J. Apr. 5, 2007).

On April 5, 2007, this court concluded that the "debtor knowingly and fraudulently failed to advise her attorney and the court about the nature of the transaction involving the sale of her home, intending by the sale to maximize the benefit of the sale to herself and her family and to defraud her unsecured creditors of any potential benefit."  Id. at *9.  I recognized that the debtor suffered from Multiple Sclerosis ("MS"), and that she routinely experienced episodes of cognitive impairment.  However, no evidence was offered at that time to allow me to assign a particular significance to a condition of cognitive impairment in the context of the deliberate actions taken by the debtor.  Moreover, I could not reconcile that condition with the actual performance by the debtor in court at both the September 8, 2005 and November 30, 2006

hearings. At those times, I found the debtor to be very articulate, intelligent and competent to ably represent herself in those proceedings. I noted that at the time of the transaction at issue, the debtor had access to legal advice, and that she had in fact consulted another law firm regarding the binding nature of her agreement with a real estate broker shortly before she presented the proposed sale of her home to the court. The debtor offered no explanation other than the blanket statement of her "cognitive impairment" to justify her failure to inform her bankruptcy counsel of the undisclosed leaseback and purchase options and the true fair market value of the property when she sought court approval for the sale. Without adequate evidence to support the debtor's claims that her actions and/or omissions were explained or excused by her cognitive impairment at the time, I determined that the elements of § 727(a)(4) were established and that the debtor's Chapter 7 discharge would be denied.

On April 18, 2007, the debtor moved for reconsideration. Debtor's moving papers implied that this court improperly made its own medical assessment of the debtor, and alleged that the court failed to make accommodation for the debtor's disability in accordance with the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. No specific subsection of the Act was alleged and no case law was presented. Debtor's motion was

considered on May 21, 2007, at which time debtor's counsel acknowledged that there was no basis to assert a failure to accommodate under the ADA. He focused instead on the fact that the debtor had originally appeared pro se and that her lack of legal expertise coupled with her disability had negatively impacted upon her ability to adequately present her case.

In essence, the debtor contends that between her illness and her medications, she was not capable of making reasoned, responsible decisions that took into account all aspects of the circumstances. Quite simply, she submits that she lacked the ability to make decisions that could rise to the level of fraud. The Chapter 7 trustee disagrees. He contends that while the debtor may have been having good days and bad days, there is no way to prove that she was having a bad day when she made each decision. He contends that her actions are consistent with someone who is trying to sell her house and still maintain control over her interests. Each of her decisions were made to benefit her. Her level of impairment was not consistent or of a continuing nature over the entire course of time in question here.

I determined to hold the matter open for thirty (30) days to afford the debtor an opportunity to produce expert evidence to support her contentions, both generally regarding her disease and specifically regarding her personal

condition.

On June 8, 2007, the debtor provided a one page letter from her treating physician, Dr. Pravin B. Vasoya, M.D. Under the paragraph heading "Impression," Dr. Vasoya stated that:

> Full neuroassessment done and patient was found to have Myelgic Body pain and ambulatory dysfunction. There is also component of stress and depression her judgement capacity on sleep deprive and rainy day is poor and her mathamatics [sp] capacity reduced but on sunny and good night sleep day her cognation improves enough to make daily activity of living decision. please refer to AAN.com and search for fibromyelgia and MS for further scientific basis for her medical disability. further evaluation and clinical correlation is suggested.

During a follow up telephone conference call on June 22, 2007, I determined that the report, standing alone, was not enough to overcome the court's earlier determination. Nonetheless, I afforded the debtor an additional opportunity to establish a link between her illness and her actions. On July 18, 2007, Dr. Vasoya presented testimony as both an expert witness and as the debtor's treating physician.

On this record, I conclude that sufficient credible medical evidence has been presented to justify reconsidering this court's April 5, 2007 opinion.

**DISCUSSION**

As a threshold matter, I note that debtor's motion for reconsideration, as captioned, seeks relief pursuant to D.N.J. LBR 9013-1(h). Our local bankruptcy rules provide that:

> A motion for reconsideration shall be filed within 10 days of the entry of the Court's order or judgment on the original motion. The motion shall be filed with a memorandum setting forth concisely the matters or controlling decisions which the movant believes constitute cause for reconsideration. A timely motion for reconsideration shall be deemed to be a motion under Fed.R.Bankr.P. 8002(b).

D.N.J. LBR 9013-1(h). Debtor's motion was filed on April 18, 2007, thirteen (13) days after the April 5, 2007 entry of this court's opinion denying the debtor her discharge. This ten (10) day time period, similar to that found in Fed.R.Bankr.P. 9023(e)[1], has been held to be a jurisdictional limitation, not subject to extension or the court's discretion. See, e.g., In re Jersey Integrated Healthpractice, Inc., No. 01-36612, 2007 WL 1725278, *1-2 (Bankr. D.N.J. June 12, 2007). Accordingly, debtor's motion would be untimely for purposes of Rule 9013-1(h).

---

[1] Rule 9023 provides that Fed.R.Civ.P. 59 applies to proceedings in bankruptcy. Rule 59(e), entitled "Motion to Alter or Amend Judgment", provides that "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

Notwithstanding the timeliness issue, the court has independent authority, pursuant to 11 U.S.C. § 105 and Fed.R.Bankr.P. 9024, to sua sponte reconsider its own orders. Section 105 provides in relevant part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Rule 9024 makes Fed.R.Civ.P. 60 applicable to bankruptcy proceedings with certain amendments.[3] Acting in conjunction, "Rule 60(b) compliments the discretionary power that bankruptcy courts have as courts of equity 'to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders.'" In re International Fibercom, Inc., No. 05-16358, 2007 WL 2610892, *4 (9th Cir. Sep., 2007) (quoting In re Lenox, 902 F.2d 737, 740 (9th Cir.1990)). See Lenox, 902 F.2d at 740 ("Although FRCP 60(b) provides that a court may relieve a party from a final order upon motion, it does not prohibit a bankruptcy judge from reviewing, sua sponte, a previous order."); In re Renaissance Stone Works, L.L.C., No. 06-49090, 2007 WL 2428658, *4 (Bankr. E.D.Mich. Aug. 28, 2007)

---

[3] Rule 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b).

("Generally, bankruptcy courts have inherent power, and authority under 11 U.S.C. § 105 (a), independent of any authority under Fed.R.Civ.P. 60(b), sua sponte to reconsider, modify or vacate orders it previously entered."). I will consider the expert testimony presented on behalf of the debtor.

Dr. Vasoya testified that the debtor was being treated for both Multiple Sclerosis ("MS") and Fibromyalgia Syndrome ("FMS"). He described the symptoms of MS to include: numbness; possible weakness on one or both sides of the body, affecting a person's coordination and balance and possibly impairing walking or causing falling; a loss of or blurred vision, and cognitive impairments including difficulty with concentration, memory, confusion and poor judgment. In addition, an individual suffering from MS usually has other related symptoms including fatigue, sleep disturbances and an inability to remember certain facts. He explained that fibromyalgia is characterized by fatigue and sleep disturbances that lead to cognitive decline because the body is unable to reach a satisfactory REM[4] level of rest, causing the body's muscles to cramp or spasm. The cumulative effect of having both diseases makes the individual more tired, more accident prone, and leads to more ambulatory issues and cognitive impairment. As well, the combination of the two conditions can lead a person to feel either depressed or euphoric, with the

---

[4] Rapid eye movement sleep (REM) is a deep stage of sleep.

consequence that the person is unable to make proper decisions.

Regarding Ms. Waters specifically, Dr. Vasoya testified that she began treatment some time in 2002. She had an MRI of her brain and spinal chord, with particular focus on the thoracic spine. The MRI revealed evidence of lesions and atrophy in her brain and on her spinal chord, but no new lesions. She initially demonstrated ambulatory issues, and by 2003-2004, she began to show her first signs of cognitive impairment. In 2003, she had additional tests, including a Somatosensory Evoked Potentials or "SSEP" and a Visual Evoked Response or "VER" to determine the extent of the delay in her brain function. The medication known as Concerta was prescribed to help reduce her fatigue and memory problems.

As is particularly relevant here, Dr. Vasoya saw Ms. Waters again on May 30, 2005. At that time, the debtor was complaining of increasing fatigue and tiredness. Although her headaches were getting better, she was experiencing numbness in one leg, difficulty in walking, and color blindness in her right eye. She was having "episodic confusion", which Dr. Vasoya defined to mean that she wavered between knowing what to do and not knowing what to do. She also occasionally forgot to take her medications. At the time, various medications were prescribed for the debtor, including Topamax, Concerta,

Copaxone and Betaseron. Dr. Vasoya explained that Topamax was a headache medication with many side effects, but whose benefits generally outweigh its negative effects. Topamax can make the patient confused and cause her to have difficulty speaking and expressing herself. Concerta helps to keep the patient awake. He described this feeling as the upper side of being bipolar. Copaxone has no significant side effects. Betaseron (interferon) can make pre-existing depression worse and can make the patient more tired.

Dr. Vasoya determined that the debtor was in the secondary progression of MS. He administered the Mini-Mental State Exam ("MMSE"), used to assess cognition. The debtor scored 19 out of 30, which represents a "moderate cognitive delay". Dr. Vasoya explained that with a moderate cognitive delay, the patient experiences serious obstruction in their mathematics abilities and short term memory. While their long term memory is preserved, their short term memory, anything under 5 minutes, is seriously compromised. They have significant speech issues and often have to think twice to respond. It is his opinion that with such a delay, a person could not make an investment decision or understand a profitability issue. He explained that such patients have both good and bad days, and sometimes they can make reasonable decisions. However, they often do not make well educated decisions and can make some irrational decisions. While they may be capable of certain goal

Case 06-01768-JHW    Doc 24    Filed 10/18/07    Entered 10/18/07 11:51:36    Desc Main
Document      Page 12 of 13


directed activities, they may not understand the consequences of achieving those goals.

As stated in my opinion of April 5, 2007, to satisfy section 727(a)(4), the evidence must indicate a knowing action taken with fraudulent intent. It appears that the debtor's actions in failing to inform her attorneys about all aspects of the proposed sale and lease-back of her home were taken knowingly. The expert testimony presented suggests, however, that even if she had the capacity to know what action she was taking, she may not have had the capacity to form the requisite fraudulent intent to defraud creditors. In other words, she may have known what steps she was taking, but she may not have been aware of the consequences of her actions. During the time period in question here, April through June of 2005, the debtor was on a variety of medications prescribed by Dr. Vasoya. He explained that those medications complicated her cognitive ability.

Dr. Vasoya's examination of the debtor on May 30, 2005 occurred within the same time frame that the debtor consulted her bankruptcy counsel to file for approval of the sale of her home. The doctor's testimony indicated that the debtor was experiencing some impairment of judgment at that time and that she was unable to function to determine the right course of action. He

explained that even though the debtor may have been able to accomplish a goal directed activity, she may not have understood the consequences of those goals and may have proceeded to accomplish them without understanding the consequences of her actions.

Based on this testimony, I am unable to conclude that the debtor had the requisite intent to fraudulently mislead the court regarding the sale of her home. According to Dr. Vasoya, both the debtor's moderate cognitive impairment and the medications prescribed for her at the time prevented her from making sound, rational business decisions and from understanding the consequences of the decisions she made.

The order denying the debtor her discharge will be vacated.

Dated:   October 18, 2007                              _____
                                                                                          JUDITH H. WIZMUR
                                                                                          CHIEF JUDGE
                                                                                          U.S. BANKRUPTCY COURT